UNITED STATES of America, Appellee,

v.

Theortres PARHAM, Appellant.

UNITED STATES of America, Appellee,

v.

Thomas Charles JOHNSON, a/k/a
T.C. Johnson, Appellant.

Nos. 93–1365, 93–1376.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1993.

Decided Feb. 14, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied in No. 93–1365
April 7, 1994.

Counsel who presented argument on behalf of the appellant was Darrell Brown, Little Rock, AR, for Parham; Perlesta Hollingsworth, for Johnson. Additional attorney appearing on the brief was Ian Weinstein, New York, NY.

Counsel who presented argument on behalf of the appellee was Rod J. Rosenstein, Washington, D.C. Additional attorney appearing on the brief was Robert P. Storch.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Theortres Parham and Charles Johnson appeal their convictions and sentences for conspiracy to vote more than once. Parham and Johnson are politically active black men who were both deputy registrars in Phillips County, Arkansas. Parham was a candidate for mayor of Helena, Arkansas in 1990. Parham and Johnson were accused of casting multiple votes for Parham in a scheme involving absentee ballots. They assert selective prosecution, *Batson* violations and error in the district court's refusal to depart downward in sentencing. We affirm the convictions but remand to the district court for consideration of Parham's and Johnson's motions to depart downward under U.S.S.G. § 5K2.0.

## I. BACKGROUND

Parham and Johnson were each charged with one count of conspiracy to commit acts of multiple voting and conspiracy to provide false information in voting in violation of 18 U.S.C. § 371 and with 18 counts of knowingly and willfully voting more than once in violation of 42 U.S.C. § 1973i(c) and (e) and 18 U.S.C. § 2. Parham and Johnson moved to dismiss the indictment, asserting that they had been selectively prosecuted. They also moved for discovery on that issue. The district court found that they had not proved a prima facie case of selective prosecution and thus denied their motions.

█ Parham and Johnson proceeded to trial. At voir dire, the government exercised peremptory challenges to strike several black venirepersons from the jury. After the jury had been sworn, and the panel had been dismissed, Parham and Johnson raised *Batson* objections.[1] The district court overruled their objections as untimely, but allowed the government to make a record on the reasons for striking the jurors.

At trial, the government attempted to prove that Parham and Johnson forged absentee ballots in order to vote more than once. A handwriting expert testified that voter signatures on the absentee ballots had

---

1. Under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Fourteenth Amendment is violated when a prosecutor uses a peremptory challenge to strike a potential juror on account of his or her race.

been forged. Parham and Johnson conceded that there were procedural irregularities in some of the absentee ballot forms, but testified that they had not signed anyone else's names to the forms. At the conclusion of the trial, one count of multiple voting was dismissed for insufficient evidence, and the jury acquitted Parham and Johnson on the remaining 17 counts. They were convicted only on the conspiracy charge.

At sentencing, Parham and Johnson argued that the acquitted counts should not be counted as relevant conduct for sentencing purposes. The district court agreed, noting that to enhance the sentence on the basis of the acquitted conduct would amount to "a tail which wags the dog." Memorandum Opinion and Order, No. LR–CR–92–72 at 4 (Jan. 28, 1993); Sentencing Transcript at 60. Consequently, the district court did not consider conduct for which Parham and Johnson had been acquitted in sentencing.[2] Parham and Johnson also requested a downward departure, which the district court denied. The district court stated: "I think as far as the base offense level, absent a motion from the Government to depart, I think I am bound by them. I don't think I can depart *sua sponte*. I think there must be a motion by the Government before I can depart." Sentencing Transcript at 10. The district court later stated, "I think this is the minimum sentence I can give these defendants." Sentencing Transcript at 64. Parham and Johnson were each sentenced to ten months, five of which were to be spent in a halfway house in Little Rock.

## II. DISCUSSION

### 1. Selective Prosecution

■ Parham and Johnson must establish a prima facie case of selective prosecu-

tion before discovery of materials requested in connection with the claim can be compelled. *United States v. Hintzman*, 806 F.2d 840, 846 (8th Cir.1986). To establish a prima facie case, a defendant must demonstrate: 1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights. *United States v. Matter*, 818 F.2d 653, 654 (8th Cir.1987). The defendant's burden is a heavy one, and because we afford broad discretion to prosecuting authorities, we require a showing of intentional and purposeful discrimination. *Id.* at 654–55. Absent this prima facie showing, the prosecution is presumed to have been undertaken in good faith. *Id.* at 655. Since determination of a prima facie case of selective prosecution is essentially a factual inquiry, we review the district court's determination on the establishment of a prima facie case of selective prosecution only for clear error. *United States v. Gutierrez*, 990 F.2d 472, 475 (9th Cir.1993).

■ Applying that high standard, we are unable to find that the district court erred in finding that Parham and Johnson did not establish a prima facie case of selective prosecution. In support of their motion, Parham and Johnson presented the affidavits of several persons outlining observations of numerous voter irregularities in eastern Arkansas.[3] We do not belittle or demean the significance of the acts outlined in the affidavits. The acts certainly warrant investigation, if not prosecution. However, egregious as they are, the acts summarized in the affidavits are

---

2. The government has not appealed that finding.

3. These irregularities are serious and pervasive. The affidavits contained evidence of numerous incidents including: episodes where black handicapped or elderly voters were refused assistance although whites were helped; rejection of black absentee ballots by white clerks; white pollwatchers questioning and photographing black voters; challenge of black absentee ballots because the ballots had been sent to the same address, while white absentee ballots sent to the same address were not questioned; casting of absentee ballots by non-resident whites or by parents for grown children; segregation of black and white pollwatchers; previous condonation of violation of proximity to poll rules for white violators and strict enforcement of proximity rules for blacks; allowing white candidates to stay in polling place while black candidates were asked to leave; and harassment and intimidation of black voters, including armed intimidation. Parham and Johnson also presented evidence that repeated complaints had been made to both local and federal officials.

not sufficiently similar to the acts of voter fraud for which Parham and Johnson were prosecuted to constitute a prima facie case of selective prosecution. Parham and Johnson were in effect charged with forging names on absentee ballots. They presented no evidence that other's acts of absentee ballot forgery or fraud were tolerated without prosecution. Where a defendant cannot show anyone in a similar situation who was not prosecuted, he has not met the threshold point of showing that there has been selectivity in prosecution. *Compare Attorney General of United States v. Irish People, Inc.,* 684 F.2d 928, 946 (D.C.Cir.1982) (no selectivity where defendant could not point to others who had violated Foreign Agents Registration Act and had not been prosecuted), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983) *with United States v. Gordon,* 817 F.2d 1538, 1540 (11th Cir.1987) (selective prosecution found where others had not been prosecuted for the same offense), *rev'd in part on other grounds,* 836 F.2d 1312 (11th Cir.1988).

### 2. *Batson* Violations

■ Parham and Johnson argue that they were denied equal protection in the government's use of three peremptory challenges to exclude three black venirepersons from the jury in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Parham and Johnson made their *Batson* challenge only after the jury was impanelled and the venire had been dismissed. They proffered no excuse for the delay. The district court denied the motion on the ground of timeliness. Although, in this circuit, we have not yet set out the precise point beyond which a *Batson* objection will be untimely, we have noted that a timely objection allows the trial court to remedy the discrimination prior to the commencement of trial. *United States v. Dobynes,* 905 F.2d 1192, 1196 (8th Cir.), *cert. denied,* 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990). We now agree with those circuits that have held that a *Batson* objection must be made at the latest before the venire is dismissed and before the trial

commences.[4] *United States v. Romero–Reyna,* 867 F.2d 834, 837 (5th Cir.1989), *cert. denied,* 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990); *Government of Virgin Islands v. Forte,* 806 F.2d 73, 75–76 (3rd Cir.1986) (failure to make objection at the close of voir dire constitutes waiver). Accordingly, we agree that the *Batson* motion in this case was untimely.

Parham and Johnson further argue that, even if their *Batson* challenge was not timely, the objection was treated as timely because the district court required the government to state its reasons for the strikes on the record. *See, e.g., Reynolds v. Little Rock,* 893 F.2d 1004, 1009 (8th Cir.1990) (an untimely motion treated as timely). We disagree. A review of the record here shows that the district court did not treat the motions as timely, but merely allowed the parties to make a record on the issue. The district court specifically and repeatedly stated that the objections were overruled as untimely, and only instructed the government to make a record and made an alternative holding for purposes of preserving the issue for appeal. Also, the government expressly stated that it did not intend to waive any timeliness objections by stating its reasons for the peremptory strikes. Transcript at 20. Because we hold the *Batson* challenge was not timely, we need not reach the merits of the stated reasons for the strikes.

### 3. Downward Departure

■ We have jurisdiction to review a sentencing court's failure to depart downward only when the district court is not aware of its authority to depart. *See United States v. Hall,* 7 F.3d 1394, 1396 (8th Cir. 1993); *United States v. Evidente,* 894 F.2d 1000 (8th Cir.), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). This is such a case. The court stated that it could not depart absent a government motion and later stated, "I think this is the minimum sentence I can give these defendants." We find that conclusion may have been errone-

---

4. We express no opinion on whether a *Batson* challenge must or should be made at any earlier point.

ous. A government motion is only required for departure for substantial assistance to the government under U.S.S.G. § 5K1.1. No government motion is required under U.S.S.G. § 5K2.0, which allows a district court to depart if it finds aggravating or mitigating circumstances of a kind, or to a degree, not adequately considered by the Sentencing Commission in formulating the Guidelines. 18 U.S.C. § 3553(b). Here, Parham and Johnson requested a departure on several grounds including: that the case was atypical, it was not a commonly prosecuted crime, and the conspiracy was not completed. Sentencing Transcript at 8–10. Parham and Johnson also requested electronic monitoring or probation, stating that they were good candidates for those penalties. Sentencing Transcript at 46 and 51. The court repeatedly referred to the bizarre nature of the case and expressly noted the long period of disenfranchisement of African–American voters in Phillips County, Arkansas.[5] Sentencing Transcript at 56–57 and 62.

 Factors warranting departure under section 5K2.0 may well exist in this case. This is for the district court to determine in the first instance. We have not ruled out the possibility of departure based on a single act of aberrant behavior. *United States v. Simpson*, 7 F.3d 813, 820 (8th Cir.1993). Also, although family ties and responsibilities and employment record are not ordinarily relevant in determining whether to grant a downward departure, extraordinary circumstances may support departure from the guideline range. *Id.* at 819; *see also United States v. One Star*, 9 F.3d 60 (8th Cir.1993); *United States v. Big Crow*, 898 F.2d 1326, 1331 (8th Cir.1990); *cf. United States v. White Buffalo*, 10 F.3d 575 (8th Cir.1993) (departure under section 5K2.0 not warranted where defendant had no dependents to support). The district court may also consider the government's conduct in a decision to

grant a downward departure. *Simpson*, 7 F.3d at 820. Also, we note that the factors warranting departure in a particular case do not exist in isolation. *Id.* The totality of those individual circumstances may well converge to create the unusual situation not contemplated by the Commission. *Id.* Because the record does not show whether facts warranting such a departure exist, either singly or in combination, we remand this issue to the district court for further consideration.

## III. CONCLUSION

For the reasons stated above, we affirm the convictions of Parham and Johnson and remand to the district court for further consideration of their motions for downward departure.

HEANEY, Senior Circuit Judge, dissenting.

I accept, for the purposes of this dissent, the statement of law set forth by the majority that Parham and Johnson must establish a prima facie case of selective prosecution before discovery can be compelled and that the appropriate standard of review is clear error.[1] The district court found that Parham and Johnson had not established a prima facie case. The majority holds that this finding was not clearly erroneous. I disagree. In my view, the two black men made out a clear prima facie case of selective prosecution on the basis of race, and the decision of the district court to the contrary is clearly erroneous.

Parham and Johnson were prosecuted by the Department of Justice and convicted of violating the Voting Rights Act of 1965 by conspiring to provide false information on eighteen absentee ballots cast for a losing black candidate in the 1990 general election

---

5. We agree with the district court that such voter discrimination is well established in Arkansas. *See Whitfield v. Democratic Party of Arkansas*, 902 F.2d 15 (8th Cir.1990) (en banc).

1. There is a split in the circuits as to whether a defendant must establish a prima facie case or only a colorable claim of selective prosecution

before an evidentiary hearing is required. *See United States v. Heidecke*, 900 F.2d 1155, 1158 (7th Cir.1990) (citations omitted). There is also a dispute as to whether the appropriate standard of review is abuse of discretion or clearly erroneous. *See United States v. Moody*, 778 F.2d 1380 (9th Cir.1985).

in Phillips County, Arkansas.[2] *See* 42 U.S.C. § 1973i(c) and (e).[3] The Department of Justice, however, failed to prosecute white political rivals who violated *the same section of the Voting Rights Act in the same county and in the same election.*[4]

The majority candidly outlines in footnote three of its opinion the "serious and pervasive" irregularities in the 1990 general election in Phillips County perpetrated by the rival white faction. It argues, however, that "egregious as they are, the [irregularities] are not sufficiently similar to the acts of voter fraud for which Parham and Johnson were prosecuted to constitute a prima facie case of selective prosecution." I find no support in the case law or logic for that proposition. The fact that the white rivals violated subdivision (b) of section 1973i rather than subdivisions (c) or (e) is not a basis to distinguish the violations.[5] Both the white and the black political factions had one goal in mind: win the election. The black defendants acted illegally in attempting to achieve that end by conspiring to vote more than once and to falsify absentee ballots, seeking to ensure a larger black vote. The white faction intimidated and harassed black voters, seeking to assure a smaller black vote. The conduct of both factions was illegal and reprehensible and both should have been charged with voter fraud.

All that is necessary to satisfy the "selectivity" requirement for a prima facie case of selective prosecution is that the offenses be similar, not identical. The majority cites a single case, *Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983), to support its view that the black defendants and the white accused are not "similarly situated" because the types of voter fraud in which they engaged are not sufficiently similar. In *Irish People*, however, the court posed the question of whether "similarly situated" persons had not been prosecuted for violating the Foreign Agents Registration Act. The decision did not turn on whether persons violated the same subdivision of the same section of the statute.

Parham and Johnson have also presented sufficient evidence of improper motive to establish their prima facie case. The government's choice to prosecute the blacks but not the whites for Voting Rights Act violations is "very difficult to explain on nonracial grounds." *See United States v. Gordon*, 817 F.2d 1538, 1541 (11th Cir.1987), *rev'd in part on other grounds on reh'g*, 836 F.2d 1312 (11th Cir.), *cert. denied*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988) (quoting *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976)). The conspiracy of which Parham and Johnson were convicted involved eighteen absentee ballots. Their affidavits contain evidence

---

2. They were also charged with substantive offenses for the same conduct but were acquitted of those charges.

3. 42 U.S.C. § 1973i(c) reads as follows:
 Whoever knowingly or willfully gives false information as to his name, address, or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, or conspires with another individual for the purpose of encouraging his false registration to vote or illegal voting, or pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both: Provided, however, That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives....

4. The defendants also presented affidavits outlining equally egregious violations of the Voting Rights Act in Chicot, Lee, and Lincoln counties, all adjacent to Phillips County in the Arkansas Delta. In my view, these affidavits provide additional support for the view that the defendants established a prima facie case of selective prosecution.

5. Subdivision (b) reads as follows:
 No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under sections 1973a(a), 1973d, 1973f, 1973g, 1973h, or 1973j(e) of this title.

of voting violations by whites that would likely affect at least that number of votes. The main distinguishing feature between the case that was prosecuted and the cases that were not investigated and prosecuted is not the scale of the alleged violations nor the severity of the conduct. Rather, the determinative factor appears to be the race of the defendants and the fact that the two black men who were prosecuted were seeking to maximize black votes while the efforts of the white persons who were not prosecuted were aimed at discouraging black voting.

This evidence, when put in the context of the local history of discrimination against blacks in voting, is sufficient to raise a strong inference that the government was motivated by race in bringing this prosecution. This court has previously noted the long history of discrimination against blacks in primary and general elections, particularly in the Arkansas Delta where Phillips County is located. *See Perkins v. City of West Helena,* 675 F.2d 201, 211 (8th Cir.), *aff'd mem.,* 459 U.S. 801, 103 S.Ct. 33, 74 L.Ed.2d 47 (1982); *Jeffers v. Clinton,* 730 F.Supp. 196, 204, 210 (E.D.Ark. 1989), *aff'd mem.,* 498 U.S. 1019, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991); *Smith v. Clinton,* 687 F.Supp. 1310, 1317 (E.D.Ark.1988). Notwithstanding the long history of discrimination, the Justice Department has never brought a criminal prosecution for voter fraud against a white resident of Phillips County. It is ironic that, after years of intimidation by white citizens of black men and women seeking to vote, the first prosecution for voting fraud should be against black defendants. The Department of Justice is to be commended for finally realizing the importance of suppressing voter fraud; now it must evenhandedly prosecute such fraud.

Having made a prima facie case of selective prosecution, Parham and Johnson are entitled to discovery and a hearing on the question of whether the government action of singling them out for prosecution was based on race. It is for the district court to decide whether the questions asked by the defendants are relevant to this inquiry.

For the foregoing reasons, I would remand this matter to the district court for action consistent with this dissent. After discovery

has been completed and an evidentiary hearing held, the district court would have to decide whether or not the defendants established a case of selective prosecution. If it found in the affirmative, it would have to dismiss the prosecution. If not, the conviction would stand.

I concur with the majority's opinion in all other respects.