**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BOB D. MORNING, SR.,
Plaintiff-Appellant,

v.

No. 96-2308

ZAPATA PROTEIN (USA),
INCORPORATED, formerly known as
Zapata Haynie Corporation,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-95-1015)

Argued: October 2, 1997

Decided: October 27, 1997

Before WILKINSON, Chief Judge, RUSSELL, Circuit Judge,
and BOYLE, Chief United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Russell and Chief Judge Boyle joined.

_____

**COUNSEL**

**ARGUED:** Jesse Marden Suit, III, RUTTER & MONTAGNA,
L.L.P., Norfolk, Virginia, for Appellant. Albert Davis Bugg, Jr.,
RUMSEY & BUGG, Irvington, Virginia, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Appellant Robert D. Morning advances two grounds for overturning the jury verdict for appellee Zapata Protein (USA), Inc. on his Jones Act claim. First, he alleges that Zapata's peremptory strikes of two potential jurors were impermissibly race-based under Batson v. Kentucky, 476 U.S. 79 (1986), and Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614 (1991) (extending Batson to civil cases). Because the Batson claim was raised after the jury was sworn and the venire dismissed, the trial judge refused to consider it. We affirm the trial court's decision. And, in light of the substantial evidence that supports the result below, we see no reason to upset the jury's verdict.

I.

Morning worked as a marine engineer aboard the Chesapeake Bay, a fishing vessel owned and operated by Zapata. On June 5, 1992, Morning was pulling large drum fish and sharks out of the net. One large shark came off the gaffing hook he was using, and Morning stepped backwards to regain his balance. The fish that had been collected on the deck made its surface slippery. Morning slipped and fell over the fish pump hose that lay on the deck behind him.

Morning filed suit under the Jones Act, 46 App. U.S.C. § 688, alleging personal injuries. At trial on June 5 and 6, 1996, Morning maintained that unseaworthy conditions on the Chesapeake Bay had caused his injuries. Morning acknowledged that slippery conditions are unavoidable when a fishing vessel is engaged in unloading her nets. However, he asserted that the fish pump hose on the Chesapeake Bay was unusually close to the ship's rail, making his work conditions unsafe. At trial Zapata introduced photographs of its other ships to demonstrate that the position of the hose on the Chesapeake Bay did not substantially differ from that on the company's other vessels. Zapata also produced pictures of the Chesapeake Bay herself, taken the morning of the accident, that refuted Morning's contention that the hose was unusually or dangerously close to the rail.

2

The jury in this case was selected from a panel of twenty-four veniremen that included seven African-Americans. Seven people were called from the venire to the jury box. Morning exercised two peremptory challenges, striking two white jurors. Zapata exercised one peremptory challenge to strike the only black juror in the group of seven. Three more persons were then called from the venire, including one black woman. Zapata exercised a second peremptory strike to remove her. A final individual was called from the venire, a white woman, whom neither party challenged. The jury was sworn and the remaining veniremen were excused and left the courtroom.

After the venire was dismissed Morning raised a <u>Batson</u> objection to Zapata's peremptory strikes. The district court considered this claim at a sidebar conference. Counsel for Zapata proffered the potential jurors' intelligence and educational backgrounds as the basis for its strikes. Morning objected that one white juror had an educational background similar to the two stricken jurors and a second white juror had a "weaker" educational background. Zapata responded that the two black jurors who were stricken had twelfth and eleventh grade educations, while every serving juror except one had undertaken some post-high school education. The one exception was a juror who had obtained her graduate equivalency diploma and worked as a store supervisor. According to Zapata, this juror thus achieved a higher level of employment responsibility than either of the stricken black jurors (one was unemployed, the other a school bus shop aide).

The court then took Morning's <u>Batson</u> motion under advisement. After the jury returned a verdict for Zapata, the district court denied the <u>Batson</u> motion as untimely because it was raised after the venire had been dismissed. The court also rejected Morning's request to overturn the jury's verdict as contrary to the evidence. Morning now appeals.

II.

Morning alleges that Zapata's counsel employed peremptory strikes to exclude black veniremen from the jury in violation of the Equal Protection Clause, <u>see Batson</u>, 476 U.S. at 89. The district court did not abuse its discretion in dismissing this claim as untimely.

3

The rule that objections not timely raised are waived is well-established, see United States v. Socony-Vacuum Oil Co., Inc., 310 U.S. 150, 238-39 (1940), and serves important purposes. A prompt objection provides an opportunity for prompt error correction, avoiding costly mistrials and unnecessary reversals. See, e.g., Government of the Virgin Islands v. Forte, 806 F.2d 73, 75 (3d Cir. 1986). Even if the objector does not initially prevail on a meritorious claim, the objection will be better preserved for appeal if the trial court compiles a record while parties' recollections remain fresh. Id. at 76.

This general rule of timeliness is especially pertinent to Batson challenges. It allows the trial court to rule on what the court has only recently observed, namely the exercise of a peremptory jury strike. See United States v. Grandison, 885 F.2d 143, 146 (4th Cir. 1989). As the trial court noted, if a meritorious Batson challenge is raised during jury selection, the error is easily remediable: an improper peremptory strike may simply be disallowed. By contrast, the remedy for a meritorious objection after dismissal of the venire is to declare a mistrial and begin proceedings anew. United States v. Joe, 928 F.2d 99, 103 (4th Cir. 1991). Starting over with a new jury panel imposes burdens on the court, the litigants and the witnesses. The court bears additional and unnecessary jury costs. See United States v. Allen, 666 F. Supp. 847, 856 (E.D. Va. 1987) ("In this and most other jurisdictions, jury costs have risen, and it is impractical to have a venire of 36 to 50 persons called and paid only to have them excused, and a new venire called, just because the defense counsel has not made a timely objection."), aff'd sub nom. United States v. Harrell, 847 F.2d 138 (4th Cir. 1988). And, of course, delay is most inconvenient for litigants and witnesses. In this case, the parties had flown witnesses to Virginia for trial and had incurred substantial expert witness fees and expenses. Furthermore, counsel for both sides had invested much effort in preparing for trial. Much of this effort might have been duplicated if a Batson claim had been entertained after the close of jury selection and trial had been rescheduled before another jury on another day.

Batson itself left implementation of its holding to each court in the context of its own jury selection procedure. 476 U.S. at 99. And in Ford v. Georgia the Court recognized as "sensible" a rule that deemed untimely a Batson claim "raised for the first time on appeal, or after

4

the jury is sworn, or before its members are selected." 498 U.S. 411, 422-23 (1991). The circuits have taken this cue, requiring Batson challenges to be raised, at the latest, before the venire is excused. E.g., United States v. Parham, 16 F.3d 844, 847 (8th Cir. 1994) ("[A] Batson objection must be made at the latest before the venire is dismissed and before the trial commences."); United States v. Maseratti, 1 F.3d 330, 335 (5th Cir. 1993) ("[T]o be timely, the Batson objection must be made before the venire is dismissed and before the trial commences."). Some circuits require a timely Batson challenge to be raised even earlier, during voir dire. See United States v. Cashwell, 950 F.2d 699, 704 (11th Cir. 1992) (Batson objections must occur during voir dire); Dias v. Sky Chefs, Inc., 948 F.2d 532, 534 (9th Cir. 1991) ("Batson objections must occur as soon as possible, preferably before the jury is sworn.").

In United States v. Joe, though we did not confront the issue of timeliness directly, we urged that Batson objections be raised and ruled on as early as possible. 928 F.2d at 103. We have also deemed untimely a Batson challenge raised for the first time on appeal. Clark v. Newport News Shipbuilding and Drydock Co., 937 F.2d 934, 939-40 (4th Cir. 1991). In light of these precedents, it is a modest and well-justified step to hold that a Batson challenge raised after the venire has been excused has been raised too late. Because Morning did not object to Zapata's exercise of its peremptory strikes until after this critical point, his objection was untimely, and, like the trial court, we do not address the merits of his Batson claim.

III.

Morning also asks us to hold that the jury's verdict for Zapata was unsupported by the evidence. However, the evidence outlined above supports a verdict for Zapata. There was ample evidence that the fish pump hose was not improperly situated, and the decks of fishing vessels are slippery by nature. Indeed, if slime on the deck of a fishing vessel renders it unseaworthy, there must be very few seaworthy fishing vessels afloat. Like the district court, we cannot say "that the verdict is against the clear weight of the evidence or is based upon evidence which is false or will result in a miscarriage of justice." Gill v. Rollins Protective Services Co., 773 F.2d 592, 594 (4th Cir. 1985). We shall therefore affirm.

AFFIRMED

5