RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 13-1769

DOLORES REID,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cr-20456-1—Bernard A. Friedman, District Judge.

Argued: May 2, 2014

Decided and Filed: August 20, 2014

Before: DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David Herskovic, Southfield, Michigan, for Appellant. Stephanie M. Hays, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** David Herskovic, Gerald M. Lorence, Southfield, Michigan, for Appellant. Robert Cares, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

DAVID W. McKEAGUE, Circuit Judge. Dolores Reid ("Reid") appeals her conviction for bribery and mail fraud, contending that: (1) the Government committed a *Batson* violation when it struck jurors for cause after asking them whether they would be prejudiced against the Government's use of information from Reid's prayer journal; (2) the Government violated

1

*Miranda* in questioning Reid without a *Miranda* warning; and (3) her trial counsel was ineffective in failing to challenge the sentencing guidelines computation. Reid also claims that her counsel was ineffective for failing to timely raise objections to each of the aforementioned claims. For the reasons set forth below, we **AFFIRM** the district court.

**I.**

Dolores Reid served as the Executive Director for State and Federal Programs for the River Rouge School District during the 2010-2011 school year. One of the vendors who received contracts for River Rouge School District was Flaggs and Associates Educational Services ("Flaggs and Associates"). Flaggs and Associates is owned by Brian Flaggs, who is Reid's brother-in-law.

Reid and Flaggs worked together to enable Flaggs to receive four contracts from the school district. The "Jump Start" program began in August 2010. To ensure that students attended the program, Reid sent out letters and enrollment forms stating that participation in the program was mandatory. Reid did not receive authorization for the program, nor did she receive authorization to mandate participation in the program. Based on the false representation that the program was mandatory, parents enrolled their children.

Flaggs received a total of $75,000 for the "Jump Start" program. The first payment of $37,000 came in September 2010. The day after Reid authorized a $37,000 check to Flaggs and Associates, Flaggs deposited the check into his bank account and took out $5,000 in cash. Two days later, Reid deposited $1,950 into her personal bank account. Reid also noted in her journal: "I thank you for the financial blessing that I received. Brian gave me $2,500 for the business he generated through the school district."

In the fall of 2010, the River Rouge School District offered tutoring to eligible students as part of the federally funded Supplemental Education Service ("SES") program. The Supplementary Educational Services Program is a "sanction" imposed on schools receiving Title I funds.[1] If a school is not satisfying minimum yearly progress, then the school district is

---

[1]Title I funds are federal funds sent to the state which are calculated based on census poverty data. The state then determines how much money goes to a particular school district and monitors the use of those funds.

required to take 20 percent of the Title I Part A funds and them funds to offer parents the option to take their children out of district or to elect supplemental education services (tutoring). However, SES guidelines require that parents have the option of picking the specific tutoring provider among the private companies who contract with the district to provide the service. Five companies, including Flaggs and Associates, entered into contracts with the district for this program.

During trial, the Government put forth evidence that Flaggs received preferential treatment at the River Rouge School District. Because the SES contract with Flaggs was executed weeks before the contracts with the other vendors, Flaggs was in a better position to market his program. Furthermore, Flaggs's contract allowed him to provide services up to a maximum of 91 students. The maximum number of students for other providers ranged from 4 to 36. Flaggs was also allowed to provide tutoring services at the elementary school, while the other contractors had to tutor at their own locations. There was no formal documentation showing that Reid and Flaggs had an agreement in which he would give her kickbacks from the compensation he was receiving from the River Rouge School District, but there were other indicia of an agreement to that effect. At trial, the Government introduced Reid's journal, which appeared to acknowledge the preferential treatment. She wrote on November 13, 2010, "I admit to giving advantage to Flaggs and Associates and I ask for forgiveness." R. 52, 11-14-12 Jury Trial Tr. at 58, PageID # 948. Furthermore, she made another entry on December 27, 2010 stating, "I thank you for the $2,500 blessing and flat screen TV (Flaggs and Associates Ed Services)." *Id.* at 59, PageID # 949.

On June 6, 2012, agents executed a search warrant at three locations, including Reid's house and the administrative offices of the River Rouge School District. Concurrently, two FBI agents interviewed Reid at the School District. Special Agents Vose and Fitzgerald approached Reid and asked if they could speak with her. Reid showed them the conference room. The agents informed Reid that her participation in the interview was voluntary. Reid, in response, stated that there was no problem and that they could go ahead with the interview.

The agents did not tell Reid that a search was being conducted when they began the interview at approximately 3:30 p.m. However, at approximately 4:20 p.m., the agents informed

Reid that a search was being conducted while she was being interviewed. Reid willingly assisted the agents in locating documents. The interview then resumed.

Reid appeared troubled to Agent Fitzgerald when he asked her about taking money and gifts. Agent Fitzgerald then told her, "[T]his is the time that you need to get it off your chest." At trial, he testified as follows: "I told her what the right thing to do is, the right thing to do is to tell the truth. And that's all I wanted to get to was the truth." R. 52, 11-14-12 Jury Trial Tr. at 88, PageID # 978. Reid then admitted that she had received $10,000 to $20,000 from Flaggs for providing preferential treatment to his company.

After some additional questioning, Reid agreed to write a statement, which began with the sentence, "I, Dolores Reid, would like to provide the following voluntary statement." *Id.* at 108–12, PageID # 998–1002. Reid wrote, "I have received ten to twenty thousand dollars from Brian Flaggs over a two-year period. I admit that I should not have accepted that cash  . . . . I received the goods because I gave preferential treatment to Flaggs and Associates." *Id.* at 112–13, PageID # 1002–03. The interview concluded at approximately 6:25 p.m., and it lasted approximately two hours and forty minutes.

During the search of Reid's residence, agents found journals in which Reid had written incriminating statements about receiving bribes from Flaggs and about giving Flaggs preferential treatment. They also found a flat screen television that, based on the notes in the prayer journals, had been purchased by Flaggs for Reid for more than $1,000.

Reid was indicted for acceptance of a bribe in violation of 18 U.S.C. § 666(a)(1)(B) and for mail fraud in violation of 18 U.S.C. § 1341. A jury found Reid guilty of both charges. The district court sentenced Reid to concurrent terms of imprisonment of 60 months for both counts.

**II.**

Reid sets forth a variety of claims on appeal, contending that: (1) the Government committed a *Batson* violation when it struck jurors after asking them whether they would be prejudiced against the Government's use of information from Reid's prayer journal; (2) the Government violated *Miranda* in questioning Reid without a *Miranda* warning; and (3) her trial counsel was ineffective in failing to challenge the sentencing guidelines computation. For each

claim, Reid alleges that her counsel was ineffective for failing to object or raise the claim in a timely manner during the course of proceedings.

Because this case is before this Court on direct appeal, we could choose to review ineffective assistance claims; however such claims generally are not appropriate for direct appeal because the record is not sufficiently developed to assess the merits of the claim. *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). "When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigation or preserving the claim and thus often incomplete or inadequate for this purpose." *Id.* at 504–05. Instead, ineffective assistance of counsel claims normally should be raised in a petition for post-conviction relief pursuant to 28 U.S.C. § 2255. *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012). In the instant case, our review of the record indicates that it is not sufficiently developed to enable us to make a determination whether defense counsel was constitutionally ineffective and whether Reid was prejudiced. Therefore, we decline to address Reid's Sixth Amendment ineffective-assistance-of-counsel claims.

### A. *Batson* Violation

Reid claims that the Government committed a *Batson* violation when it asked a question about obtaining evidence from a person's prayer journal and subsequently successfully sought to strike three jurors "for cause"[2] on the basis that the jurors would not be able to serve impartially on the jury. Reid claims that this question and the request to strike the three jurors "for cause"[3] was intended specifically to eliminate African American jurors from the jury pool.

---

[2]*Batson* challenges typically arise in connection with peremptory challenges, which do not require explanation. The Government aptly questions whether *Batson* applies to "for cause" challenges. While neither party points to a case where a *Batson* challenge was raised in connection with a "for cause" strike, we assume, only for the purposes of this appeal and without deciding, that *Batson* may be used to challenge a "for cause" strike.

[3]The voir dire transcript provides an account of the questioning by the Government and also provides support that the Government exercised "for cause" strikes. However, it is important to note this transcript does not indicate the race of the jurors who were excused.

*Batson v. Kentucky*, 476 U.S. 79 (1986), established that the Equal Protection Clause prohibits striking jurors through peremptory challenges on the basis of race. To establish a *Batson* violation,

> the defendant must show that [s]he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Id.* at 96 (internal quotations and citations omitted). Following this inquiry, the burden shifts to the Government to come forward with a neutral explanation for using the peremptory strike. *Id.* at 97. However, in order to preserve a *Batson* challenge, numerous circuit courts have held that counsel must timely object *during* the voir dire process, or at the latest before the venire is dismissed. *See, e.g., United States v. McCrory*, 82 F.3d 1243, 1247 (2d Cir. 1996) ("The Court's discussion in *Batson*, however, makes clear that it envisioned an objection raised during the jury selection process."); *Morning v. Zapata Protein (USA), Inc.*, 128 F.3d 213, 216 (4th Cir. 1997); *United States v. Contreras-Contreras*, 83 F.3d 1103, 1104 (9th Cir. 1996); *United States v. Parham*, 16 F.3d 844, 847 (8th Cir. 1994); *United States v. Maseratti*, 1 F.3d 330, 335 (5th Cir. 1993); and *United States v. Cashwell*, 950 F.2d 699, 704 (11th Cir. 1992).

We have not previously addressed this issue in a published opinion.[4] We now hold that a *Batson* challenge must be raised contemporaneously with the voir dire process or prior to the time that the venire is dismissed. Because Reid did not timely object to the alleged *Batson* violation, she has waived her right to do so here.

---

[4]The Sixth Circuit, in an unpublished opinion, held that a *Batson* objection made after jury selection and after the venire was discharged was not timely and, therefore, the defendant waived his right to challenge the government's exercise of a peremptory challenge. *United States v. Peraza*, 25 F.3d 1051 (6th Cir. 1994) (per curiam). Accordingly, a failure to object to the alleged discriminatory use of peremptory challenges prior to the conclusion of jury selection results in the waiver of that objection.

**B.  Statements Made During Questioning and *Miranda***

Reid was charged with both mail fraud and accepting a bribe.  One of the key pieces of evidence against Reid was her written statement, given to Agent Fitzgerald and Agent Vose, that she had accepted between ten and twenty thousand dollars from Brian Flaggs in return for preferential treatment and contracts for SES programs.  Reid claims that her statement to the agents was inadmissible, because she was not given a *Miranda* warning before she made her statement.  *Miranda v. Arizona*, 384 U.S. 436, 445 (1966).

Unfortunately for Reid, she did not file a pre-trial motion to suppress, as required by Federal Rule of Criminal Procedure 12(b)(3)(C).  In failing to do so, Reid has waived her right to appellate review, of her *Miranda* claims.  As we noted in *United States v. Yannot*:

> We have previously held that under Rule 12, this court is "categorically without jurisdiction to hear appeals of suppression issues raised for the first time on appeal." *United States v. Cismon*, 950 F.2d 966, 969 (6th Cir. 1990) (per curiam). "This court strictly applies Rule 12(b), and has repeatedly held that the failure to raise 12(b) motions in a timely fashion precludes appellate review." *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir. 1988).

42 F.3d 999, 1005 (6th Cir. 1994).  Accordingly, we decline to review Reid's *Miranda* claim on the merits.

**C.  Sentencing Guidelines**

Reid claims that she received ineffective assistance of counsel when her counsel failed to argue for an accurate scoring of her sentencing guidelines.  The presentence investigation report sets the loss amount for guideline purposes at $165,540, resulting in a total offense level of 30 and a sentencing range of 97 to 121 months. PSR at ¶ 42.  Under *United States v. Washington*, 715 F.3d 975, 984, 985 (6th Cir. 2013),  a loss amount must be reduced by the fair market value of the services provided, and the defendant has the burden of proving the specific value by which the loss amount should be reduced.

Here, however, Reid's counsel did not attempt to prove the specific value by which the loss amount should be reduced.  The government filed a sentencing memorandum that alerted the court to the failure of defense counsel to attempt to offset the loss amount, as follows:

In this case, Ms. Reid has made no effort to prove the specific value by which the loss amount should be reduced for services rendered. Nevertheless, the government is obliged to inform the court that the investigation in this case has established that Flaggs and Associates did provide some services. Because the court has not been presented with a reliable and justifiable figure, the court could depart from the guideline range in recognition that some services were provided to the River Rouge School District. In light of the circumstances of this case and the fact that the school district had received something of value from Flaggs and Associates, in the form of services, the government does not object to a position that the sentencing guidelines overstate the seriousness of the crime.

R. 36, Govt. Sent. Memo. at 4, PageID # 137. In response, the district court varied from the guideline range downward, imposing a sentence of 60 months.

Reid's only claim on appellate review is that her counsel was constitutionally ineffective for failing to challenge the guideline calculations at sentencing. As previously stated, ineffective assistance of counsel claims generally are not appropriate for direct appeal because the record is not sufficiently developed to assess the merits of the claim. The record in the instant case is not sufficiently developed to enable us to make a determination whether defense counsel was constitutionally ineffective and whether Reid was prejudiced. Accordingly, we decline to address Reid's Sixth Amendment claim on direct appeal.

**III.**

For these reasons, we **AFFIRM** the judgment of the district court.